**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL OSMON and<br>LAMOR GATENIO-OSMON,<br><br>Plaintiffs,<br><br>v.<br><br>WALMART INC. and<br>WAL-MART TRANSPORTATION, LLC,<br><br>Defendant. | ) | No. |

# COMPLAINT

Plaintiffs MICHAEL OSMON and LAMOR GATENIO-OSMON, through their attorneys, Wallace Miller, bring this action against Defendants WALMART INC. and WAL-MART TRANSPORTATION, LLC as follows:

## NATURE OF THE ACTION

1. This case arises primarily from Walmart's decision to use Ebaid Group LLC to haul Walmart freight. Walmart Inc. and Wal-Mart Transportation, LLC are referred to collectively as the "Walmart Defendants."

2. On information and belief, one or both Walmart Defendants arranged, assigned, tendered, or approved the shipment for transportation by Ebaid Group. The precise role of each Walmart Defendant is pleaded in the alternative because the records identifying the entity that arranged, tendered, and approved the shipment remain within Defendants' possession and control.

3. Before the shipment was assigned, public records showed recent safety problems involving Ebaid Group's drivers, hours-of-service compliance, electronic logs, vehicle maintenance, and out-of-service violations. Those records also showed that Ebaid Group was

closely connected to another carrier under common ownership that had faced federal enforcement action and had been placed out of service.

4. Despite these warning signs, one or both Walmart Defendants selected, approved, retained, or continued using Ebaid Group without conducting a reasonable safety review or confirming that the documented safety problems had been corrected.

5. On September 13, 2024, while hauling Walmart's freight, Ebaid Group's driver failed to yield and turned his tractor-trailer across Plaintiff Michael Osmon's right of way. The turn blocked Mr. Osmon's path, causing his motorcycle to collide with the tractor-trailer. The driver left the scene without stopping.

6. The collision left Mr. Osmon with life-threatening and permanent injuries, including a traumatic brain injury, multiple facial and skull fractures, a fractured jaw, intracranial bleeding, a ruptured spleen, a comminuted and displaced left-arm fracture, internal bleeding, and hemorrhagic shock.

7. Plaintiffs spent the better part of a year tracking down the driver who caused the collision and left the scene.

8. At the time of the collision, the Ebaid Group tractor-trailer was transporting freight owned, controlled, consigned, received, purchased, sold, distributed, or otherwise being transported for the benefit of one or both Walmart Defendants.

9. Upon information and belief, Wal-Mart Transportation, LLC, acting in its capacity as a federally authorized property broker, arranged the transportation of the subject Walmart shipment and selected, retained, assigned, approved, and/or tendered the shipment to Ebaid Group.

10. Alternatively, Walmart Inc. acted as the shipper, consignor, consignee, beneficial cargo owner, customer, transportation principal, or entity that directly selected, approved, retained, or caused the selection of Ebaid Group.

11. Alternatively, Walmart Inc. and Wal-Mart Transportation, LLC participated jointly in selecting, approving, retaining, assigning, or tendering the shipment to Ebaid Group.

12. Plaintiffs cannot yet determine the Walmart Defendants' precise respective roles because the carrier agreements, load tenders, bills of lading, transportation-management records, payment records, and electronic communications identifying those roles remain within Defendants' possession and control.

13. Plaintiffs bring this action to recover for injuries and losses caused by one or both Defendants' own negligent selection, approval, retention, and continued use of Ebaid Group.

14. Plaintiffs also bring this action under theories of respondeat superior against Walmart Inc. and Wal-Mart Transportation, LLC.

## PARTIES

15. Plaintiff Michael Osmon is a citizen and resident of Illinois.

16. Plaintiff Lamor Gatenio-Osmon is Michael Osmon's wife and is a citizen and resident of Illinois.

17. Defendant Walmart Inc. is a corporation organized under the laws of Delaware with its principal place of business in Bentonville, Arkansas.

18. Walmart Inc. conducts substantial retail, shipping, receiving, transportation, distribution, and logistics operations throughout the United States, including Illinois.

19. Defendant Wal-Mart Transportation, LLC is a Delaware limited liability company and a subsidiary of Walmart Inc.

20. Upon information and belief, Walmart Inc. is the sole member of Wal-Mart Transportation, LLC, making Wal-Mart Transportation, LLC a citizen of Delaware and Arkansas for diversity-jurisdiction purposes.

21. Wal-Mart Transportation, LLC is registered with the Federal Motor Carrier Safety Administration under USDOT No. 63585 and MC No. 311233.

22. Upon information and belief, at all times relevant to this action, Wal-Mart Transportation, LLC possessed federal authority to operate as a broker of property transported by motor carriers.

23. At all relevant times, Defendants acted through their employees, officers, agents, apparent agents, transportation personnel, logistics personnel, supply-chain personnel, carrier-services personnel, contractors, affiliates, and representatives acting within the scope of their actual or apparent authority.

24. Walmart Inc. and Wal-Mart Transportation, LLC are referred to collectively herein as the "Walmart Defendants," except where their individual conduct or capacities are separately alleged.

## JURISDICTION AND VENUE

25. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) because Plaintiffs are citizens of Illinois, Defendants are not citizens of Illinois, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

26. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in Lake County, Illinois, within the Northern District of Illinois.

27. This Court has personal jurisdiction over Defendants because they conduct substantial business and transportation activities in Illinois and because the shipment they arranged, tendered, selected, approved, and/or caused to be transported resulted in a collision and injuries in Illinois.

**THE SEPTEMBER 13, 2024 COLLISION**

28. On September 13, 2024, Michael Osmon was riding his motorcycle southbound on the entrance ramp to southbound Interstate 94 in Wadsworth, Illinois, near Edwards Road.

29. Mr. Osmon was not traveling above the posted speed limit as he approached the junction.

30. Mr. Osmon's path down the ramp was not controlled by a stop sign or traffic signal.

31. Mr. Osmon had the right of way.

32. At approximately the same time, an Ebaid Group tractor-trailer was stopped on Edwards Road, facing west at its intersection with the entrance ramp.

33. The Ebaid Group tractor-trailer was controlled by a stop sign.

34. The stop sign required the Ebaid Group driver to stop and yield to oncoming southbound traffic before turning onto the ramp.

35. Instead of yielding, the Ebaid Group driver attempted an abrupt left turn onto the entrance ramp.

36. The tractor-trailer crossed directly into Mr. Osmon's path.

37. Mr. Osmon's motorcycle collided with the Ebaid Group tractor-trailer.

38. The collision inflicted life-threatening and permanent injuries upon Mr. Osmon.

39. After the collision, the Ebaid Group driver continued onto Interstate 94 without stopping.

40. Upon information and belief, the tractor-trailer was transporting Walmart freight pursuant to a shipment arranged, tendered, assigned, selected, approved, and/or caused to be transported by one or both Walmart Defendants.

## THE WALMART DEFENDANTS' ROLE IN THE TRANSPORTATION

41. Wal-Mart Transportation, LLC is engaged in the business of arranging and offering to arrange the transportation of property by authorized motor carriers.

42. Upon information and belief, Wal-Mart Transportation, LLC arranged or offered to arrange the transportation of the subject shipment by Ebaid Group for compensation.

43. In arranging the subject transportation, Wal-Mart Transportation, LLC exercised discretion to select, approve, assign, or tender the shipment to Ebaid Group.

44. To the extent Wal-Mart Transportation, LLC arranged the subject transportation by Ebaid Group for compensation, rather than accepting and legally binding itself to transport the shipment as a motor carrier, it acted as a property broker with respect to the shipment.

45. Alternatively, Walmart Inc. acted as the shipper, consignor, consignee, beneficial cargo owner, customer, or transportation principal with respect to the subject shipment.

46. Alternatively, Wal-Mart Transportation, LLC acted in one or more of those capacities with respect to the subject shipment.

47. In one or more of their respective capacities, one or both Walmart Defendants directly hired, selected, approved, retained, or caused the selection of Ebaid Group to transport the shipment.

48. Alternatively, one or both Walmart Defendants placed or retained Ebaid Group in an approved carrier pool or other carrier selection system through which Ebaid Group became eligible to transport Walmart freight.

49. Alternatively, Walmart Inc. delegated the operational carrier-selection tasks to Wal-Mart Transportation, LLC or another transportation agent while retaining carrier-qualification requirements, approval rights, audit rights, monitoring rights/authority, and/or authority to reject, suspend, or disqualify a carrier.

50. The Walmart Defendants possessed substantially greater access than members of the general public to Ebaid Group's carrier application, onboarding materials, insurance information, authority information, safety records, equipment information, driver information, performance history, prior shipments, and communications.

51. The precise allocation of carrier-selection, carrier-approval, and carrier-monitoring responsibilities between the Walmart Defendants is reflected in documents and electronically stored information presently within their exclusive or predominant possession and control. Plaintiffs therefore plead Defendants' respective capacities and responsibilities hypothetically and/or in the alternative without waiving or limiting Plaintiffs' separate claims against Defendants who may be jointly liable.

## THE WORK REQUIRED A COMPETENT AND CAREFUL MOTOR CARRIER

52. The transportation of a loaded commercial tractor-trailer over interstate public highways creates a foreseeable risk of severe physical injury or death unless performed by a competent and careful motor carrier using qualified, properly supervised, adequately rested, and law-abiding drivers and reasonably safe equipment.

53. The Walmart Defendants knew or should have known that selecting an unsafe, unqualified, inadequately supervised, or improperly monitored motor carrier to transport Walmart freight would expose members of the motoring public to an unreasonable risk of physical harm.

54. Having selected, approved, retained, and/or caused Ebaid Group to transport the subject shipment, the Walmart Defendants were required to exercise reasonable care in determining whether Ebaid Group was competent and careful to perform the transportation required.

**EBAID GROUP'S COMMON OWNERSHIP AND OPERATIONAL RELATIONSHIP WITH FALCON FORCE**

55. The FMCSA commonly uses the term "chameleon" or "reincarnated" carrier to describe a trucking company that continues substantially the same operations under a new or affiliated identity, particularly where common ownership or control is used to avoid or conceal regulatory problems. See 49 C.F.R. §§ 385.1003, 385.1005, and 386.73(c); see also Federal Motor Carrier Safety Administration, The Implementation of a Risk-Based Vetting Methodology to Identify Chameleon Carriers Applying for Operating Authority: Report to Congress 2–4 (June 2013).[1]

56. Chameleon carriers are dangerous because they allow unsafe trucking operations to continue under a new or affiliated identity, concealing prior violations, enforcement actions, and out-of-service history.

57. Federal regulations expressly prohibit carriers from using common ownership, management, control, or family relationships to conceal their prior violations, enforcement actions, and out-of-service history.

58. Here, before the subject shipment was tendered to Ebaid Group, federal and state records reflected that Ebaid Group was owned, managed, and controlled by Abubakr Hassan and Wahbi Hassan and operated from 6004 Brushwood Court, Greensboro, North Carolina.

---

[1] https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/docs/Implementation-of-Methodology-to-Identify-Chameleon-Carriers-Report-to-Congress-508.pdf.

59. Those records also reflected that another motor carrier, Falcon Force Inc., formerly operated as Wahbi Ebaid Hassan Alhemaidy d/b/a AL Ebaid Trucking, under USDOT No. 2642324 and MC No. 921011.

60. Ebaid Group and Falcon Force shared the same business address and substantially overlapping ownership, officers, management, and control.

61. Upon information and belief, the Hassan principals used Ebaid Group and Falcon Force as successive or closely affiliated entities through which they operated substantially the same or a materially overlapping trucking business.

62. Publicly obtainable federal records reflected a close temporal relationship between the operating histories of the two carriers.

63. Ebaid Group's operating authority had been revoked on or about August 14, 2023.

64. Ebaid Group's operating authority was reinstated on or about January 11, 2024.

65. Falcon Force's liability-insurance filing was cancelled effective January 12, 2024, one day after Ebaid Group's authority was reinstated.

66. Falcon Force's operating authority was involuntarily revoked on or about January 22, 2024.

67. Falcon Force was subsequently placed out of service on or about April 15, 2024.

68. Ebaid Group thus resumed active federal operations immediately before the commonly controlled Falcon Force lost its insurance, operating authority, and legal ability to perform interstate motor-carrier operations.

69. The common address, overlapping ownership and management, and immediate succession in operating status constituted material carrier-qualification red flags requiring further investigation into whether the carriers shared or transferred drivers, tractors, trailers, dispatch

operations, safety personnel, customers, electronic-logging accounts, insurance contacts, and other operational resources.

70. Although these facts do not by themselves prove that Ebaid Group was a chameleon carrier, they created a reasonable basis to suspect that Ebaid Group was continuing some or all of Falcon Force's operations and required further investigation before Ebaid Group was approved to transport Walmart freight.

## FALCON FORCE'S FEDERAL ENFORCEMENT HISTORY

71. Before the subject occurrence, Falcon Force had been the subject of an FMCSA enforcement proceeding involving violations of federal regulations concerning:

a. required random drug-and-alcohol testing; and

b. an employer's use or authorization of a driver who lacked, or was disqualified from holding, the commercial driver's license or endorsement required to operate the commercial motor vehicle.

72. The enforcement proceeding resulted in an approximately $11,500 penalty and was closed in or about November 2023.

73. Falcon Force was subsequently placed out of service following its failure to pay a federal civil penalty.

74. Falcon Force's enforcement and out-of-service history, together with its common ownership, management, and address with Ebaid Group, constituted information relevant to whether Ebaid Group possessed adequate driver-qualification, drug-and-alcohol-compliance, supervision, and safety-management systems.

## EBAID GROUP'S PRE-OCCURRENCE SAFETY HISTORY

75. Ebaid Group's own pre-occurrence roadside-inspection history disclosed recent and material evidence of deficient safety management.

76. On May 15, 2024, approximately four months before the subject occurrence, an Ebaid Group tractor and driver were cited for multiple hours-of-service, driving, and electronic-logging-device violations.

77. The May 15, 2024 violations included:

a. driving more than 11 hours following the required period off duty;

b. driving beyond the permissible 14-hour on-duty window;

c. driving more than eight hours without the required interruption or rest period;

d. making a false report concerning the driver's duty status;

e. violating a lane restriction;

f. failing to possess required instructions describing the electronic-logging device's data-transfer mechanisms and the procedure for producing and transferring hours-of-service records; and

g. failing to properly mount the electronic logging device.

78. The May 15, 2024 inspection resulted in multiple out-of-service violations involving excessive driving time and false or noncompliant duty-status records.

79. On May 21, 2024, another Ebaid Group tractor was cited for operating with an exposed or flat tire, insufficient tire tread, and inoperable headlamps.

80. The tire condition identified during the May 21, 2024 inspection resulted in the tractor being placed out of service.

81. On August 14, 2024, less than one month before the subject occurrence, another Ebaid Group inspection disclosed that:

a. the driver had failed to certify the accuracy of information gathered by the electronic logging device; and

b. the electronic-logging-device display could not be viewed outside the commercial motor vehicle as required.

82. These violations concerned the particular safety functions required to safely operate a commercial tractor-trailer, including:

a. preventing fatigued driving;

b. enforcing hours-of-service limits;

c. requiring honest and accurate duty-status records;

d. supervising commercial drivers;

e. ensuring driver qualification and regulatory compliance;

f. maintaining roadworthy commercial vehicles; and

g. removing unsafe drivers and equipment from service.

83. The violations were recent, repeated, and directly relevant to Ebaid Group's ability to supervise drivers and safely perform interstate commercial transportation.

84. Information concerning Ebaid Group's inspection and operating history was available through federal motor-carrier records and/or ordinary carrier-vetting records, databases, and procedures reasonably available to a sophisticated national shipper and federally authorized property broker.

85. Ebaid Group's common ownership, management, and address with Falcon Force were likewise reasonably discoverable through ordinary pre-selection investigation.

86. A reasonably careful investigation would have required the Walmart Defendants to determine whether Ebaid Group had corrected the deficiencies disclosed by its recent inspections.

87. A reasonably careful investigation would also have required the Walmart Defendants to determine whether Ebaid Group had continued or assumed any portion of Falcon Force's drivers, equipment, dispatch operations, safety practices, or other operations.

88. Upon information and belief, the Walmart Defendants failed to conduct that investigation or conducted it without reasonable care.

89. Upon information and belief, the Walmart Defendants failed to require Ebaid Group to demonstrate that it had corrected the driver-supervision, hours-of-service, logging, qualification, compliance, and vehicle-safety deficiencies reflected in the records described above.

90. Despite the material and unresolved warning signs, the Walmart Defendants selected, approved, retained, and/or caused Ebaid Group to transport the subject shipment.

## PARTICULAR UNFITNESS AND CAUSATION

91. Before the subject shipment was tendered, Ebaid Group demonstrated a particular unfitness concerning the management, qualification, supervision, and regulatory compliance of the drivers entrusted to operate its commercial motor vehicles.

92. That particular unfitness created a foreseeable danger that an Ebaid Group driver would operate a tractor-trailer without adequate regard for traffic laws, hours-of-service requirements, safety regulations, and the safety of other highway users.

93. The subject driver's failure to yield from a stop-controlled roadway, abrupt movement across Mr. Osmon's right of way, and flight from the scene were consistent with and foreseeable manifestations of deficient driver oversight, driver qualification, safety management, and regulatory compliance.

94. Upon information and belief, Ebaid Group's deficient driver-selection, qualification, supervision, hours-of-service, recordkeeping, and safety-management practices caused or contributed to the subject driver's unsafe conduct and the resulting collision.

95. Had the Walmart Defendants exercised reasonable care, they would not have selected, approved, retained, or tendered the subject shipment to Ebaid Group.

96. Had Ebaid Group not been selected or approved for the subject shipment, its driver and tractor-trailer would not have been transporting the subject Walmart freight at the location and time of the collision, and the collision never would have happened.

**COUNT I – BROKER LIABILITY AGAINST WAL-MART TRANSPORTATION, LLC**
**(Negligent Selection, Approval, and Retention)**

97. Plaintiffs reallege paragraphs 1 through 96 as though fully set forth herein.

98. Upon information and belief, Wal-Mart Transportation, LLC arranged or offered to arrange the transportation of the subject shipment by Ebaid Group for compensation.

99. Upon information and belief, Wal-Mart Transportation, LLC selected, retained, assigned, approved, and/or tendered the subject shipment to Ebaid Group while acting as a property broker.

100. Wal-Mart Transportation, LLC knew that the transportation would be performed by commercial tractor-trailer over public highways and would create a risk of severe physical harm unless performed by a competent and careful motor carrier.

101. Wal-Mart Transportation, LLC owed members of the motoring public, including Michael Osmon, a duty to exercise reasonable care in selecting and retaining the motor carrier used to perform the transportation.

102. Before selecting or retaining Ebaid Group, Wal-Mart Transportation, LLC knew or should have known that Ebaid Group had a particular unfitness concerning driver supervision, driver qualification, hours-of-service compliance, electronic recordkeeping, regulatory compliance, and motor-vehicle safety.

103. Wal-Mart Transportation, LLC was negligent in one or more of the following respects:

a. selected, assigned, approved, and/or retained Ebaid Group when it knew or should have known that Ebaid Group was not a competent and careful motor carrier for the transportation required;

b. failed to conduct a reasonable investigation of Ebaid Group's regulatory, inspection, enforcement, and out-of-service history;

c. failed to consider Ebaid Group's recent hours-of-service, false-log, electronic-logging-device, driving, vehicle-maintenance, and out-of-service violations;

d. failed to investigate the common ownership, management, address, and operational relationship among Ebaid Group, Falcon Force, and AL Ebaid Trucking;

e. failed to determine whether Ebaid Group had assumed, continued, or shared Falcon Force's drivers, equipment, dispatch operations, safety personnel, electronic-logging accounts, or safety practices;

f. failed to consider Falcon Force's driver-qualification, drug-and-alcohol-testing, enforcement, insurance, authority, and out-of-service history;

g. failed to require Ebaid Group to demonstrate that its pre-occurrence safety deficiencies had been corrected;

h. relied solely or primarily upon the existence of active operating authority and liability insurance without adequately considering Ebaid Group's actual inspection, compliance, and affiliated-carrier history;

i. failed to apply reasonable carrier-qualification, carrier-approval, and carrier-monitoring standards;

j. failed to follow its own carrier-selection, onboarding, monitoring, suspension, and disqualification policies and procedures;

k. failed to suspend, remove, reject, or disqualify Ebaid Group from transporting the subject shipment;

l. continued to approve or retain Ebaid Group despite material and unresolved safety warning signs; and

m. otherwise failed to exercise reasonable care in selecting and retaining Ebaid Group.

104. Ebaid Group's particular unfitness was connected to and contributed to the unsafe operation involved in the subject collision.

105. The collision and injuries suffered by Plaintiffs were among the foreseeable motor-vehicle harms that made Wal-Mart Transportation, LLC's selection and retention of Ebaid Group unreasonable.

106. As a direct and proximate result of Wal-Mart Transportation, LLC's negligence, Michael Osmon sustained injuries and damages including:

a. past and future physical pain and suffering;

b. past and future emotional distress;

c. past and future disability and loss of a normal life;

d. disfigurement;

e. past and future medical, hospital, rehabilitation, pharmaceutical, and related expenses;

f. past and future lost earnings and impairment of earning capacity;

g. property damage; and

h. other damages to be proven at trial.

WHEREFORE, Plaintiff Michael Osmon requests judgment against Defendant Wal-Mart Transportation, LLC in an amount exceeding $75,000, and all other relief the Court deems appropriate.

**COUNT II – SHIPPER LIABILITY**
**(Negligent Selection, Approval, and Retention Against Wal-Mart Transportation, LLC)**

107. Plaintiffs reallege paragraphs 1 through 96 as though fully set forth herein.

108. This Count is pleaded in the alternative to Count I.

109. At the time of the subject shipment, Wal-Mart Transportation, LLC acted as the shipper, consignor, consignee, beneficial cargo owner, customer, transportation principal, or entity for whose benefit the freight was being transported.

110. Wal-Mart Transportation, LLC directly selected, hired, approved, retained, or caused Ebaid Group to be selected to transport the subject shipment either individually or by and through its agent/agents.

111. Alternatively, Wal-Mart Transportation, LLC retained and exercised the authority to approve, reject, suspend, or disqualify Ebaid Group from transporting Walmart freight.

112. Wal-Mart Transportation, LLC knew that transporting the subject freight by tractor-trailer over public highways created a foreseeable risk of severe physical harm unless the transportation was performed by a competent and careful motor carrier.

113. Having selected, hired, approved, retained, or caused the selection of Ebaid Group as a carrier, Wal-Mart Transportation, LLC owed members of the motoring public, including Michael Osmon, a duty to exercise reasonable care in determining whether Ebaid Group was competent and careful for the work required.

114. Before selecting, approving, or retaining Ebaid Group, Wal-Mart Transportation, LLC knew or should have known that Ebaid Group had a particular unfitness concerning driver supervision, driver qualification, hours-of-service compliance, electronic recordkeeping, regulatory compliance, and motor-vehicle safety.

115. Wal-Mart Transportation, LLC was negligent in one or more of the following respects:

a. selected, hired, approved, retained, and/or caused the selection of Ebaid Group when they knew or should have known that Ebaid Group was not a competent and careful motor carrier for the transportation required;

b. failed to conduct a reasonable investigation of Ebaid Group’s regulatory, inspection, enforcement, and out-of-service history;

c. failed to consider Ebaid Group’s recent hours-of-service, false-log, electronic-logging-device, driving, maintenance, and out-of-service violations;

d. failed to investigate the common ownership, management, address, and operational relationship among Ebaid Group, Falcon Force, and AL Ebaid Trucking;

e. failed to determine whether Ebaid Group had assumed, continued, or shared Falcon Force's drivers, equipment, dispatch operations, safety personnel, electronic-logging accounts, or safety practices;

f. failed to consider Falcon Force's driver-qualification, drug-and-alcohol-testing, enforcement, insurance, authority, and out-of-service history;

g. failed to require Ebaid Group to demonstrate that its pre-occurrence safety deficiencies had been corrected;

h. relied solely or primarily upon active operating authority and insurance without adequately considering Ebaid Group's actual safety, inspection, compliance, and affiliated-carrier history;

i. failed to establish or apply reasonable carrier-qualification, approval, monitoring, suspension, and disqualification standards;

j. failed to follow their own carrier-selection, carrier-approval, safety, monitoring, suspension, and disqualification policies and procedures;

k. failed to exercise retained authority to reject, remove, suspend, or disqualify Ebaid Group;

l. permitted the subject shipment to be tendered to Ebaid Group without requiring an adequate safety investigation;

m. failed to reasonably supervise or audit the carrier-selection process undertaken on their behalf; and

n. otherwise failed to exercise reasonable care in selecting, approving, and retaining Ebaid Group.

116. Ebaid Group's particular unfitness was connected to and contributed to the unsafe operation involved in the subject collision.

117. The collision and injuries suffered by Plaintiffs were among the foreseeable motor-vehicle harms that made the selection and approval of Ebaid Group unreasonable.

118. As a direct and proximate result of the Wal-Mart Transportation, LLC' negligence, Michael Osmon sustained injuries and damages including:

a. past and future physical pain and suffering;

b. past and future emotional distress;

c. disability and loss of a normal life;

d. disfigurement;

e. past and future medical, hospital, rehabilitation, pharmaceutical, and related expenses;

f. lost earnings and impairment of earning capacity;

g. property damage; and

h. other damages to be proven at trial.

WHEREFORE, Plaintiff Michael Osmon requests judgment against Defendant Wal-Mart Transportation, LLC, in an amount exceeding $75,000, and all other relief the Court deems appropriate.

**COUNT III – SHIPPER LIABILITY**
**(Negligent Selection, Approval, and Retention Against Walmart Inc.)**

119. Plaintiffs reallege paragraphs 1 through 96 as though fully set forth herein.

120. This Count is pleaded hypothetically and/or in the alternative to Counts I and/or II.

121. At the time of the subject shipment, Walmart Inc. acted as the shipper, consignor, consignee, beneficial cargo owner, customer, transportation principal, or entity for whose benefit the freight was being transported.

122. Walmart Inc. directly selected, hired, approved, retained, or caused Ebaid Group to be selected to transport the subject shipment either individually or by and through its agent/agents.

123. Alternatively, Walmart Inc. retained and exercised the authority to approve, reject, suspend, or disqualify Ebaid Group from transporting Walmart freight.

124. Walmart Inc. knew that transporting the subject freight by tractor-trailer over public highways created a foreseeable risk of severe physical harm unless the transportation was performed by a competent and careful motor carrier.

125. Having selected, hired, approved, retained, or caused the selection of Ebaid Group as an carrier, Walmart Inc. owed members of the motoring public, including Michael Osmon, a duty to exercise reasonable care in determining whether Ebaid Group was competent and careful for the work required.

126. Before selecting, approving, or retaining Ebaid Group, Walmart Inc. knew or should have known that Ebaid Group had a particular unfitness concerning driver supervision, driver qualification, hours-of-service compliance, electronic recordkeeping, regulatory compliance, and motor-vehicle safety.

127. Walmart Inc. was negligent in one or more of the following respects:

a. selected, hired, approved, retained, and/or caused the selection of Ebaid Group when they knew or should have known that Ebaid Group was not a competent and careful motor carrier for the transportation required;

b. failed to conduct a reasonable investigation of Ebaid Group's regulatory, inspection, enforcement, and out-of-service history;

c. failed to consider Ebaid Group's recent hours-of-service, false-log, electronic-logging-device, driving, maintenance, and out-of-service violations;

d. failed to investigate the common ownership, management, address, and operational relationship among Ebaid Group, Falcon Force, and AL Ebaid Trucking;

e. failed to determine whether Ebaid Group had assumed, continued, or shared Falcon Force's drivers, equipment, dispatch operations, safety personnel, electronic-logging accounts, or safety practices;

f. failed to consider Falcon Force's driver-qualification, drug-and-alcohol-testing, enforcement, insurance, authority, and out-of-service history;

g. failed to require Ebaid Group to demonstrate that its pre-occurrence safety deficiencies had been corrected;

h. relied solely or primarily upon active operating authority and insurance without adequately considering Ebaid Group's actual safety, inspection, compliance, and affiliated-carrier history;

i. failed to establish or apply reasonable carrier-qualification, approval, monitoring, suspension, and disqualification standards;

j. failed to follow their own carrier-selection, carrier-approval, safety, monitoring, suspension, and disqualification policies and procedures;

k. failed to exercise retained authority to reject, remove, suspend, or disqualify Ebaid Group;

l. permitted the subject shipment to be tendered to Ebaid Group without requiring an adequate safety investigation;

m. failed to reasonably supervise or audit the carrier-selection process undertaken on their behalf; and

n. otherwise failed to exercise reasonable care in selecting, approving, and retaining Ebaid Group.

128. Ebaid Group's particular unfitness was connected to and contributed to the unsafe operation involved in the subject collision.

129. The collision and injuries suffered by Plaintiffs were among the foreseeable motor-vehicle harms that made the selection and approval of Ebaid Group unreasonable.

130. As a direct and proximate result of the Walmart Inc.'s negligence, Michael Osmon sustained injuries and damages including:

a. past and future physical pain and suffering;

b. past and future emotional distress;

c. disability and loss of a normal life;

d. disfigurement;

e. past and future medical, hospital, rehabilitation, pharmaceutical, and related expenses;

f. lost earnings and impairment of earning capacity;

g. property damage; and

h. other damages to be proven at trial.

WHEREFORE, Plaintiff Michael Osmon requests judgment against Defendant Walmart Inc. in an amount exceeding $75,000 and all other relief the Court deems appropriate.

**COUNT IV**
**VICARIOUS LIABILITY AGAINST WALMART INC.**
**(Agency through Wal-Mart Transportation, LLC)**

131. Plaintiff Michael Osmon realleges and incorporates 1 through 118 as though fully set forth herein.

132. At all times relevant to this action, Wal-Mart Transportation, LLC acted as the actual and/or apparent agent of Walmart Inc. in arranging, managing, coordinating, selecting, approving, retaining, assigning, tendering, and/or monitoring motor carriers used to transport Walmart freight.

133. Walmart Inc. authorized Wal-Mart Transportation, LLC to perform transportation and carrier-selection functions on Walmart Inc.'s behalf and for Walmart Inc.'s benefit.

134. Walmart Inc. retained and/or exercised the right to direct or control Wal-Mart Transportation, LLC's transportation activities, including through carrier-qualification requirements, approval rights, audit rights, monitoring authority, performance requirements, and the authority to reject, suspend, remove, or disqualify motor carriers from transporting Walmart freight.

135. Wal-Mart Transportation, LLC accepted and acted pursuant to Walmart Inc.'s authority by arranging, selecting, approving, retaining, assigning, tendering, and/or causing Ebaid Group to transport the subject Walmart shipment.

136. In performing those activities, Wal-Mart Transportation, LLC acted within the course and scope of its actual and/or apparent agency for Walmart Inc. and in furtherance of Walmart Inc.'s business.

137. As alleged more fully above, Wal-Mart Transportation, LLC negligently selected, approved, retained, assigned, tendered, and/or continued to use Ebaid Group despite information showing that Ebaid Group was not a competent and careful motor carrier for the transportation required.

138. Wal-Mart Transportation, LLC's negligent acts and omissions were committed within the course and scope of its agency for Walmart Inc.

139. Walmart Inc. is therefore vicariously liable for the negligent acts and omissions of Wal-Mart Transportation, LLC under the doctrine of respondeat superior.

140. The collision and the injuries suffered by Plaintiff Michael Osmon were among the foreseeable motor-vehicle harms that made the selection, approval, retention, and use of Ebaid Group unreasonable.

141. As a direct and proximate result of the negligence of Wal-Mart Transportation, LLC, for which Walmart Inc. is vicariously liable, Plaintiff Michael Osmon sustained injuries and damages including:

a. past and future physical pain and suffering;

b. past and future emotional distress;

c. past and future disability and loss of a normal life;

d. disfigurement;

e. past and future medical, hospital, rehabilitation, pharmaceutical, and related expenses;

f. past and future lost earnings and impairment of earning capacity;

g. property damage; and

h. other damages to be proven at trial.

WHEREFORE, Plaintiff Michael Osmon requests judgment against Defendant Walmart Inc. in an amount exceeding $75,000 and all other relief the Court deems appropriate.

**COUNT V**
**VICARIOUS LIABILITY AGAINST WALMART INC.**
**(Agency Through Ebaid Group, LLC)**

142. Plaintiff Michael Osmon realleges paragraphs 1 through 51 as though fully set forth herein.

143. Upon information and belief, at the time of the subject transportation and collision, Ebaid Group acted as the actual and/or apparent agent of Walmart Inc. in transporting the subject Walmart shipment.

144. Walmart Inc. selected, approved, retained, engaged, and/or caused Ebaid Group to transport freight owned, controlled, consigned, received, purchased, sold, distributed, or otherwise transported for the benefit of Walmart Inc.

145. Ebaid Group accepted that undertaking and transported the subject shipment on Walmart Inc.'s behalf and in furtherance of Walmart Inc.'s retail, shipping, receiving, distribution, logistics, and transportation business.

146. Upon information and belief, Walmart Inc. retained and/or exercised the right to direct or control material aspects of Ebaid Group's performance of the subject transportation, including one or more of the following:

a. determining whether Ebaid Group was eligible or approved to transport Walmart freight;

b. assigning, approving, or tendering the subject shipment;

c. identifying the freight to be transported and its origin and destination;

d. establishing pickup, delivery, scheduling, routing, tracking, communication, security, equipment, operating, and/or performance requirements;

e. monitoring Ebaid Group's performance of the shipment;

f. requiring compliance with Walmart Inc.'s transportation, safety, operational, or vendor requirements; and

g. retaining the authority to reject, remove, suspend, or disqualify Ebaid Group from transporting Walmart freight.

147. Alternatively, Walmart Inc. held Ebaid Group out as authorized to transport Walmart freight on its behalf, knowingly permitted Ebaid Group to act in that capacity, and caused members of the public reasonably to understand that Ebaid Group was performing Walmart Inc.'s transportation business.

148. At the time of the collision, Ebaid Group and its driver were transporting the subject Walmart shipment within the course and scope of that actual and/or apparent agency and in furtherance of Walmart Inc.'s business.

149. Ebaid Group acted through the driver operating the subject tractor-trailer.

150. While acting within the course and scope of the agency alleged herein, Ebaid Group and its driver were negligent in one or more of the following respects:

a. failed to yield to the right-of-way at a stop sign as is required by 625 ILCS 5/11-904;

b. failed to yield the right of way to Plaintiff Michael Osmon;

c. attempted a left turn before it could be made with reasonable safety as required by 625 ILCS 5/11-804;

d. failed to yield to the right-of-way after entering from a private road as required by 625 ILCS 5/11-906;

e. entered the entrance ramp when it was not reasonably safe to do so;

f. turned the tractor-trailer across Plaintiff Michael Osmon's lane of travel;

g. attempted a left turn across Plaintiff's path when it was unsafe to do so;

h. failed to keep a proper lookout;

i. failed to maintain proper route awareness during the moments leading up to Defendant's left turn and subsequent crash;

j. failed to adequately observe approaching traffic before beginning or continuing the turn;

k. operated the tractor-trailer in violation of applicable traffic and motor-carrier safety requirements;

l. failed to stop at or return to the scene after the collision; and/or

m. acting otherwise carelessly or recklessly under the circumstances.

151. Walmart Inc. is vicariously liable for the negligent acts and omissions of Ebaid Group and its driver committed within the course and scope of their actual and/or apparent agency.

152. As a direct and proximate result of the negligence of Ebaid Group and its driver, for which Walmart Inc. is vicariously liable, Plaintiff Michael Osmon sustained injuries and damages including:

a. past and future physical pain and suffering;

b. past and future emotional distress;

c. past and future disability and loss of a normal life;

d. disfigurement;

e. past and future medical, hospital, rehabilitation, pharmaceutical, and related expenses;

f. past and future lost earnings and impairment of earning capacity;

g. property damage; and

h. other damages to be proven at trial.

WHEREFORE, Plaintiff Michael Osmon requests judgment against Defendant Walmart Inc. in an amount exceeding $75,000, together with costs and all other relief the Court deems appropriate.

**COUNT VI**
**VICARIOUS LIABILITY AGAINST WAL-MART TRANSPORTATION, LLC**
**(Agency Through Ebaid Group, LLC)**

153. Plaintiff Michael Osmon realleges paragraphs 1 through 51 as though fully set forth herein.

154. Upon information and belief, at the time of the subject transportation and collision, Ebaid Group acted as the actual and/or apparent agent of Wal-Mart Transportation, LLC in transporting the subject Walmart shipment.

155. Wal-Mart Transportation, LLC selected, approved, retained, engaged, and/or caused Ebaid Group to transport freight owned, controlled, consigned, received, purchased, sold, distributed, or otherwise transported for the benefit of Wal-Mart Transportation, LLC and/or Walmart Inc.

156. Ebaid Group accepted that undertaking and transported the subject shipment on the Walmart Defendants' retail, shipping, receiving, distribution, logistics, and transportation business.

157. Upon information and belief, Wal-Mart Transportation, LLC retained and/or exercised the right to direct or control material aspects of Ebaid Group's performance of the subject transportation, including one or more of the following:

a. determining whether Ebaid Group was eligible or approved to transport Walmart freight;

b. assigning, approving, or tendering the subject shipment;

c. identifying the freight to be transported and its origin and destination;

d. establishing pickup, delivery, scheduling, routing, tracking, communication, security, equipment, operating, and/or performance requirements;

e. monitoring Ebaid Group's performance of the shipment;

f. requiring compliance with Walmart Inc. and/or Wal-Mart Transportation, LLC's transportation, safety, operational, or vendor requirements; and

g. retaining the authority to reject, remove, suspend, or disqualify Ebaid Group from transporting Walmart freight.

158. Alternatively, Wal-Mart Transportation, LLC held Ebaid Group out as authorized to transport Walmart freight on its behalf, knowingly permitted Ebaid Group to act in that capacity, and caused members of the public reasonably to understand that Ebaid Group was performing Walmart Inc.'s transportation business.

159. At the time of the collision, Ebaid Group and its driver were transporting the subject Walmart shipment within the course and scope of that actual and/or apparent agency and in furtherance of Walmart Inc. and/or Wal-Mart Transportation, LLC's business.

160. Ebaid Group acted through the driver operating the subject tractor-trailer.

161. While acting within the course and scope of the agency alleged herein, Ebaid Group and its driver were negligent in one or more of the following respects:

a. failed to yield to the right-of-way at a stop sign as is required by 625 ILCS 5/11-904;

b. failed to yield the right of way to Plaintiff Michael Osmon;

c. attempted a left turn before it could be made with reasonable safety as required by 625 ILCS 5/11-804;

d. failed to yield to the right-of-way after entering from a private road as required by 625 ILCS 5/11-906;

e. entered the entrance ramp when it was not reasonably safe to do so;

f. turned the tractor-trailer across Plaintiff Michael Osmon's lane of travel;

g. attempted a left turn across Plaintiff's path when it was unsafe to do so;

h. failed to keep a proper lookout;

i. failed to maintain proper route awareness during the moments leading up to Defendant's left turn and subsequent crash;

j. failed to adequately observe approaching traffic before beginning or continuing the turn;

k. operated the tractor-trailer in violation of applicable traffic and motor-carrier safety requirements;

l. failed to stop at or return to the scene after the collision; and/or

m. acting otherwise carelessly or recklessly under the circumstances.

162. Wal-Mart Transportation, LLC is vicariously liable for the negligent acts and omissions of Ebaid Group and its driver committed within the course and scope of their actual and/or apparent agency.

163. As a direct and proximate result of the negligence of Ebaid Group and its driver, for which Wal-Mart Transportation, LLC is vicariously liable, Plaintiff Michael Osmon sustained injuries and damages including:

a. past and future physical pain and suffering;

b. past and future emotional distress;

c. past and future disability and loss of a normal life;

d. disfigurement;

e. past and future medical, hospital, rehabilitation, pharmaceutical, and related expenses;

f. past and future lost earnings and impairment of earning capacity;

g. property damage; and

h. other damages to be proven at trial.

WHEREFORE, Plaintiff Michael Osmon requests judgment against Defendant Wal-Mart Transportation, LLC in an amount exceeding $75,000, together with costs and all other relief the Court deems appropriate.

## COUNT VII
## LOSS OF CONSORTIUM
## AGAINST WALMART INC. AND WAL-MART TRANSPORTATION, LLC

164. Plaintiff Lamor Gatenio-Osmon realleges paragraphs 1 through 163 as though fully set forth herein.

165. At all relevant times, Lamor Gatenio-Osmon and Michael Osmon were lawfully married.

166. As a direct and proximate result of the injuries caused by one or both Defendants, Lamor Gatenio-Osmon has suffered and will continue to suffer losses including the loss or impairment of Michael Osmon's companionship, society, affection, assistance, services, support, and consortium.

167. Lamor Gatenio-Osmon's injuries and losses are derivative of the claims alleged in Counts I through VI.

WHEREFORE, Plaintiff Lamor Osmon-Gatenio requests judgment against Defendants Walmart Inc. and Wal-Mart Transportation, LLC, jointly, severally, and/or in the alternative as permitted by law, in an amount exceeding $75,000 and all other relief the Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants Walmart Inc. and Wal-Mart Transportation, LLC, jointly, severally, and/or in the alternative as permitted by law, and award the following relief:

A. Compensatory damages in an amount to be determined at trial, including, but not limited to, past and future medical expenses, past and future lost wages and diminished earning capacity, past and future pain, suffering, and emotional distress, past and future loss of a normal life, permanent disability and disfigurement, loss of consortium, and other pecuniary and non-pecuniary damages recoverable under Illinois law.

B. Pre- and post-judgment interest as allowed by law;

C. Reasonable attorneys' fees;

D. Cost of suit incurred by Plaintiffs in this action;

E. Punitive damages; and

F. Any further relief this Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by 12-person jury on all triable issues.

Respectfully Submitted,

By: */s/ Nicholas P. Kelly*
Nicholas P. Kelly

Nicholas P. Kelly (ARDC No.: 6327138)
Kathleen B. McGivney (ARDC No.: 6346005)
**WALLACE MILLER**
200 West Madison Street, Suite 3400
Chicago, IL 60606
T: (312) 261-6193
F: (312) 275-8174
npk@wallacemiller.com
kbm@wallacemiller.com

***Attorneys for Plaintiffs***